## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| RONALD REECE, | ) | CASE NO. CV 09-87-E-BLW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | MEMORANDUM DECISION |
| v. | ) | AND ORDER |
| | ) | |
| | ) | |
| POCATELLO/CHUBBUCK | ) | |
| SCHOOL DISTRICT NO. 25, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it a motion for summary judgment filed by Defendant Pocatello/Chubbuck School District's No. 25 (Docket No. 9).  The Court heard oral argument on May 3, 2010.  For the reasons expressed below, the Court will grant the motion with respect to the third and fourth claims for relief and deny the motion as to the remaining claims.

## BACKGROUND

Plaintiff Ronald Reece began his employment with the School District in 1994. From 1994 to 2007, Reece taught "Keyboarding I" at Hawthorne Middle School. Following the 2006-2007 school year, Reece was reprimanded and involuntarily reassigned from Hawthorne to teach Geography and Study Skills at Franklin Middle School.

Reece alleges he was reassigned to Franklin in retaliation for reporting female student allegations of improper sexually-oriented conduct by Hawthorne Principal Douglas Reader. Reece claims he first learned of the allegations through his colleague, Hawthorne Math teacher, Cindy Lovell. On May 7, 2007, Ms. Lovell approached Reece with 24 written statements from female students complaining of sexual harassment by Mr. Reader. Reece maintains he knew nothing of the statements prior to May 7, 2007, and he played no role in obtaining or gathering the statements.

The same day – May 7, 2007 – Reece and Ms. Lovell provided the statements to legal counsel, Norman Reece,[1] who then delivered the statements to the Idaho Department of Health and Welfare. The Department immediately contacted local law enforcement. Reece also hand-delivered the statements to Bob Devine, Director of Secondary Education, at the District's Administrative offices.

---

[1] Norman Reece is also the Plaintiff's brother.

His delivery to Mr. Devine included two letters: one Reece drafted dated May 7, 2007, and another letter dated April 26, 2006, signed by a first-year teacher, H. Mercedes Nelson.  The letters criticized Reader's management style.  The teachers' letters did not relate to the student allegations of sexually harassing conduct by Mr. Reader, with the exception of one comment by Nelson that she had overheard a student say she would not try out for cheerleading because she did not want Reader "checking me out."  *See Howell Aff.*, *Exhibit C* (Docket No. 9-8).  Reece's letter contained no similar comment suggesting his knowledge of student sexual harassment claims against Reader.  *See Howell Aff.*, *Exhibit A* (Docket No. 9-7).

Both local law enforcement and the District immediately commenced investigations into the issues raised by the materials Reece had presented.   On May 24, 2007, the police investigators submitted a copy of an investigative report to the Pocatello City Prosecutor's office.  The Prosecutor's office declined to pursue criminal charges against Reader.  *See Howell Aff.*, *Exhibit G* at 17 (Docket No. 9-8).  Counsel for the District, Brian K. Julian,[2] and the Director of Human Resources, Douglas Howell, Ed.D, conducted the investigation on behalf of the District.  The District's investigation consisted of interviewing most of the students

---

[2] The Court is concerned that if either party feels it necessary to call Mr. Julian as a witness, this may implicate the provisions of  Rules 3.7 of the Idaho Rules of Professional Conduct (2003) which prohibits a lawyer from acting "as an advocate at a trial in which the lawyer is likely be a necessary witness..."    The Court would suggest that counsel confer on this issue and, if necessary, bring it to the Court's attention for resolution well in advance of trial.

involved and members of the Hawthorne staff.  Howell drafted a 20-page report detailing the persons interviewed and his conclusions.  *See Howell Aff.*, *Exhibit D* (Docket No. 9-8).

Reece claims the District's investigation and report were "liability limiting" and "biased" rather than protective of female students.  *See Plaintiff's Brief* at 11-12.   Reece criticizes the investigation because (1) Mr. Julian, who also serves as counsel for the District's liability insurer, conducted the investigation, (2) the investigators were "rude" and "demeaning," (3) students who were interviewed were not allowed to call their parents or have them present; (4) parents only received notice that their children were being interviewed by Julian and Howell after the fact; and (5) the investigative report omitted a key provision from the District's Harassment policy regarding *"leering." Id.* At 11-12.   Reece further alleges Howell sent a letter to the students' parents falsely stating that the students "recanted" their statements.  *See Plaintiff's Brief* at 12.

The District's investigation into the allegations against Reader resulted in the issuance of a "Notice of Reprimand and Notice of Reassignment" against Reece, on June 12, 2007.  *See Howell Aff., Exhibit F* (Docket No. 9-8.).  Howell, writing on behalf of the District, stated:

> During the investigation an alarming pattern of misconduct was discovered involving another teacher and yourself. ...It is clear that you had discussed and conspired with another

> teacher in order to paint the Principal in a very damaging light....However, it is simply too great of a coincidence that the only to teachers in the entire school that had verbal complaints about the management style of the Principal were the instigators of the solicitation of the student complaints.

In the Reprimand, Mr. Howell also accused Reece of violating federal law, State Board of Education regulations, and local School Board policy by sharing a students disciplinary file with his attorney and by failing to report the suspected abuse of children in compliance with Idaho law.  *Id.* at 1-2.  Mr. Howell states in the Reprimand that Reece admitted in his interview that he had shared the file.  *Id.* at 1.  With respect to Reece's alleged failure to report suspected child abuse, the District stated: "Your holding back information and allowing the solicitation of other student statements contributed to a climate of accusatory conduct which led to substantial damage to the reputation of various individuals." *Id.* at 2.

Mr. Howell directed Reece to refrain from (1) gossiping about other school employees; (2) encouraging reports of misconduct for the purpose of inflicting damage on his supervisor or co-employees; (3) using students in any damaging or harmful acts; and (4) retaliating against any of the parties involved in the complaint, Hawthorne colleagues and students, the investigators, the school administrators and the district administrators.  *Id.* at 2-3.  Mr. Howell warned Reece would be terminated if he failed to comply with the above directives.  *Id.*

The Reprimand was placed in Reece's personnel file and the information regarding his involvement in reporting the student allegations of sexual harassment was forwarded to the Professional Standards Commission for review.  *Id.* at 2.

Reece denies that he "conspired" with another teacher to collect the student statements.  He maintains he first learned of the statements on May 7, 2007, and he immediately turned over the statements to his attorney, who caused it to be reported to the proper authorities.  The Reprimand does not cite any direct evidence suggesting Reece knew about the statements prior to May 7, 2007, or that he helped solicit the statements.  *See See Howell Aff., Exhibit F* (Docket No. 9-8.).  Reece also denies showing a student's disciplinary file to any person other than the District's attorney, Mr. Julian, and the Reprimand cites no evidence to the contrary.  The Professionals Standards Commission did not find any misconduct.

In addition, the Reprimand included a notice of involuntarily transfer from Hawthorne to Franklin Middle School.  *See Howell Aff., Exhibit F* at 2 (Docket No. 9-8).  The District assigned Reece to teach Geography instead of Keyboarding I and to create a new Study Skills class.  Reece had never taught Geography and had no background in this subject; nor had he taught Study Skills.  Mr. Howell did not inform him that he would be teaching these classes until the first day he reported to the new school despite repeated requests for the information; he had to scramble to create new lesson plans for the two classes.  Initially, Mr. Howell took the position

that Reece was not qualified to teach the new classes and he would have to take a course and a test for qualification.  According to Reece, the District has only recently abandoned this position.

Reece claims he has tried unsuccessfully to reapply for vacant Keyboarding positions posted on-line, but always being informed the positions are closed even though the on-line posting shows that they are open.  He further claims the District has begun to subject him to a heightened scrutiny and unprecedented monitoring.

## LEGAL STANDARD

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence, including all reasonable inferences which may be drawn therefrom,  must be viewed in a light most favorable to the non-moving party, *id.* at

255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party

opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir.2002); *see also* Fed.R.Civ.P. 56(e).  In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).  If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay.  *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

In order to preserve a hearsay objection, "a party must either move to strike the affidavit or otherwise lodge an objection with the district court." *Pfingston v. Ronan Engineering Co.,* 284 F.3d 999, 1003 (9th Cir. 2002).  In the absence of objection, the Court may consider hearsay evidence. *Skillsky v. Lucky Stores, Inc.,* 893 F.2d 1088, 1094 (9th Cir. 1990).

## ANALYSIS

## Retaliation Claims under Title IX and Section 1983

The District contends that Reece has failed to make a prima facie case for retaliation under Title IX (20 U.S.C. § 1681, *et. seq.*) And Section 1983 (4.2. U.S.C. § 1983) because (1) Reece did not suffer an adverse employment action; and (2) no causal link exists between the alleged protected activity and the adverse action.

Title IX prohibits educational institutions receiving federal financial assistance from retaliating against persons for opposing unlawful discrimination. *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005).  Those legal principles guiding a court in a Title VII dispute apply with equal force in a Title IX and Section 1983 action.[3]  To make out a prima facie case of retaliation, the employee must show that (1) he engaged in a protected activity, such as the filing of a complaint alleging sexual harassment; (2) the employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action.  *Hardage v. CBS Broad., Inc.*, 436 F.3d 1050 (9th Cir. 2006).

### A.    Prima Facie Case

An adverse employment action includes any activity that a reasonable

---

[3] Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress,...." 42 U.S.C. § 1983.

employee would have found materially adverse, which in this context means it well might dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  It is an objective standard. *Burlington Northern*, 548 U.S. at 68.  But "[c]ontext matters.  The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships...." *Id.* at 69 (internal quotations marks and citation omitted).  "[A]n 'act that would be immaterial in some situations is material in others.'" *Id.*

This test may cover lateral transfers. *Burlington Northern*, 548 U.S. at 68. *See also Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000).   In *Burlington Northern*, the Supreme Court explained that "[c]ommon sense suggests that a good way to discourage an employee...from bringing discrimination charges would be to insist that she spend more time performing more arduous duties and less time performing those that are easier or more agreeable." *Id.* at 70. *See also Strother v. Southern California Permanente Medical Group,* 79 F.3d 859, 869 (9th Cir. 1996) (finding  more "burdensome work schedule" could amount to adverse employment action).

The District relies on the Seventh Circuit's holding in *Lucero v. Nettle Creek School*, 566 F.3d 720 to argue that Reece's involuntary transfer did not constitute an adverse employment action. *Lucero*, however, differs in material respects from

the present case.  In *Lucero*, the court rejected the plaintiff's claim that her reassignment from teaching English to seniors to teach English to seventh graders was an adverse employment action.  *Id.* at 729-30.  The court reasoned, "[s]he continued to teach the same academic subject in the same building and under the same conditions after her reassignment.  In fact, her reassigned duties were the same teaching duties she successfully performed for all but one year of teaching for the School Corporation."  *Id*. at 729.  Under these facts, the Seventh Circuit concluded, "[n]o reasonable employee would see her reassignment as materially adverse."  *Id.* at 730.

In contrast, in this case, Reece did not continue to teach the same academic subject in the same building and under the same conditions after his reassignment.  Instead, he was transferred involuntarily to a different school with the accompanying stigma associated with such a move.  Prior to his transfer, he had taught the same subject in the same school for 13 years.  But in his new assignment, he had to learn to teach two new subjects that he had never taught and had no background in teaching, he had to create an entirely new class, and he had to write new lesson plans.  Reece also testified that he did not learn of these new assignment until the first day of school despite numerous requests for this information; therefore, he had to hurriedly create lesson plans and was forced to abandon lesson plans he had long-ago written, modified, and improved over years

of teaching Keyboarding.  A reasonable juror could find Reece's new duties were objectively more arduous than his previous duties.

The Court cannot therefore say, as a matter of law, that Reece's involuntary transfer to a different school, where he was forced to teach two new and unfamiliar subjects, was not an adverse employment action.  *Burlington Northern*, 548 U.S. at 68.

In addition, the Reprimand Reece received accusing him of violating state and federal law and threatening to dismiss him from employment if the conduct continued could constitute an adverse employment action.  Undeserved reprimands and threats of severe disciplinary action may constitute adverse employment actions.  *Ray*, 217 F.3d at 1240-41; *see also Bergin v. N. Clackamas Sch. Dist*., No. CV-03-1412-ST, 2005 WL 66069, at * 11 (D.Or. Jan. 12, 2005).  Reece's unwavering denial that he participated in a conspiracy to solicit student statements, or that he improperly shared a student record, without irrefutable evidence to the contrary, raises questions of fact concerning whether the Reprimand was deserved or whether it was retaliatory.  While the Reprimand might not have made a dramatic impact on Reece's job, conduct need not relate to the terms or conditions of employment to give rise to a retaliation claim.  *Burlington Northern*, 548 U.S at 70.

Reece also alleges that he tried to apply to open Keyboarding positions

on-line, but he was denied access and that he was subjected to increased

"monitoring."  The Court does not find either of these to be adverse employment

actions.  With respect to the first allegation, Reece has come forward with no proof

raising the inference that this alleged denial of access was intentional.  For

example, Reece does not allege another person was able to access the online

applications when he was not.  Increased monitoring also does not constitute an

adverse employment action.  *See, e.g. Schaulis v. CTB/McGraw-Hill, Inc.*, 496

F.Supp. 666, 675 (N.D.Cal.1980).[4]

Reece also satisfies the causation element because only a month separates

his submission of the student statements and notice of his reprimand and

involuntary transfer.  Causation may be inferred from the employer's knowledge

that the plaintiff engaged in protect and the proximity in time between the

protected action and the allegedly retaliatory employment decision.  *Yartzoff v.

Thomas*,  809 F.2d 1371, 1376.   This evidence raises the minimal inference of

causation necessary to establish a *prima facie* case.

Reece has therefore established a *prima facie* case.  Reece's prima facie

burden is not an onerous one.  "[T]he requisite degree of proof necessary to

establish a prima facie case for Title VII on summary judgment is minimal and

---

[4] This does not mean Reece is automatically precluded from testifying at trial to these incidents as evidence of the District's retaliatory intent.

does not even need to rise to the level of a preponderance of the evidence."
*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061-62 (9th Cir. 2002 )
(internal quotation mark and citation omitted).

### B.   Pretext

The District responds that Reece was reprimanded and transferred for
conspiring to damage Reader's career, using students to damage Reader's career,
and sharing confidential student records in violation of state and federal law, all
legitimate reasons that swing the burden back to Reece to show pretext.  He needs
to present only "very little evidence" of pretext to survive summary judgment.
*Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1072 (9th Cir. 2003).  Because
motivations are often difficult to ascertain, "such an inquiry should be left to the
trier of fact" since impermissible motives are often easily masked "behind a
complex web of post hoc rationalizations."  *Id.* at 1073.

The Court finds questions of fact whether the District's stated reasons for the
reprimand and involuntary transfer are pretextual.  First, there is a temporal
proximity – just a month passed between Reece's submission of the student
statements and his reprimand and the involuntary transfer.  *See, e.g., Stegall*, 350
F.3d at 1069-70.

Second, there are questions regarding the District's stated reasons for
reprimanding and transferring Reece.  Pretext may be proven by showing that the

employer's proffered explanation is "unworthy of credence because it is internally inconsistent or otherwise not believable." *Chuang v. University of California Davis, Bd. of Trustees,* 225 F.3d 1115, 1127 (9th Cir. 2000).  The District accuses Reece of conspiring to damage Reader's career, participating in a plan that involved soliciting student statements to damage Reader's career, and sharing student files with his legal counsel.  However, as noted above, Reece has consistently denied "conspiring" to destroy Reader, denied "soliciting" student statements of sexual harassment, and denied sharing student records with legal counsel.  And the District has come forward with almost no evidence supporting their supposed belief that he engaged in this conduct.

The primary evidence the District cites to prove the existence of a "conspiracy to damage [Reader's] career" is "coincidence."  *See Howell Aff., Exhibit F* at 1 (Docket 9-8).  They have no proof that Reece participated in soliciting student statements, or even knew about them before May 7, 2007; Reece denies that he knew, and no student or anyone else has ever come forward claiming Reece knew about their statements before May 7, 2007.  With respect to the last proffered reason – that Reece "admittedly shared" a student disciplinary record with his legal counsel – Reece denies he admitted to sharing a student record or that he shared the record, and the District does not cite any evidence proving otherwise.

This lack of evidence to support the District's alleged belief[5] that Reece engaged in this conduct at least raises the minimal inference of pretext needed to overcome a summary judgment.[6]

Moreover, the fact that Reece may have created "an extremely negative climate at the school" by reporting the student allegations, *see Howell Aff.* at ¶ 13 (Docket No. 9-6), is not a legitimate reason to punish Reece; he had an obligation to report credible claims of sexual harassment by an administrator regardless of his motives or whether they later proved untrue.  Allegations of discrimination or sexual harassment often can create a negative environment, but this does not mean they should not be reported so long as they are not patently false.  "Reporting incidents of discrimination is integral to Title IX enforcement and would be discouraged if retaliation against those who report went unpunished," *Jackson*, 544 U.S. at 180, solely because management felt the report "created a negative

---

[5] The Court recognizes that the District need not show that Reece actually engaged in a conspiracy to use students in order to discredit Reader, but only that it held an honest belief Reece engaged in this conduct.  *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1063 (9th Cir. 2002).  The Court finds, however, that the record is sufficient to allow a fact-finder to conclude that the District did not honestly belief its reasons for its actions.

[6] The District argues that Reece admitted he did not have evidence of pretext based on his deposition testimony stating he really didn't "see how I could know what they [District personnel] are thinking."  The Court does not construe this as an admission that Reece does not have evidence of pretext.  Reece is not a lawyer and he may not have a complete understanding of the law regarding pretext.  Moreover, his statement is correct.  He, like virtually every other Title VII or Title IX Plaintiff, is not in a position to provide evidence as to the attitudes and beliefs which motivated the District.   It is that inherent difficulty which led the Supreme Court to establish vehicles, like the *McDonnell-Douglas* burden-shifting analysis, which eases the burden of plaintiffs in surviving summary judgment motions.

environment."

The Court acknowledges that a jury could reasonably find that the District reprimanded and transferred Reece for perfectly legitimate, non-retaliatory reasons. But because the alleged misconduct that led to Reece's transfer and the protected activity are so closely connected and because the District has come forward with so little evidence that Reece did anything improper in connection with reporting the sexual harassment claims, the Court believes this is a question better left to the jury. As the Ninth Circuit has advised, "it is not within our province to delve into these factual disputes; rather, we leave them for the trier of fact." *Stegall*, 350 F.3d at 1071. The Court will heed this advice given the factual disputes surrounding the reprimand and transfer decision.

Indeed, in this case, the Court questions the need to apply the *McDonnell-Douglas* burden shifting analysis in the first instance. This case is unusual. In the typical case, an employee has engaged in some allegedly protected activity, and at some point thereafter an adverse employment action is taken that is facially unrelated to the protected activity. In that setting the Supreme Court developed the *McDonnell-Douglas* framework as a useful tool to assist plaintiffs at the summary judgment stage to reach trial; without this paradigm, it would be very difficult for a plaintiff to prove an employer's retaliatory intent when the protected activity and the adverse employment action otherwise appear wholly unrelated. *Costa v. Desert*

*Palace, Inc.,* 299 F.3d 838, 854-55 (9th Cir. 2002).  However, "nothing compels the parties to invoke the *McDonnell Douglas* presumption."  *Id.* at 855.  Rather, Reece may simply produce direct or circumstantial evidence of retaliatory intent.  *Id.*  Here, it may have been unnecessary to use McDonnell-Douglas because an admitted and obvious connection exists between the protected activity and the employment action at issue.  Nevertheless, the McDonnell-Douglas method of analysis has become so ubiquitous and broadly-accepted, that the Court has analyzed the Plaintiff's claims here under that familiar standard.   Under the facts of this case, the connection between the protected activity and the employment action is so close, that it simply cannot be untangled on summary judgment – whether the case is analyzed under the *McDonnell-Douglas* framework or under the more general summary judgment standard.

### Retaliaton Claims under Title VII and IHRA

The District contends that Reece's Title VII and Idaho Human Rights Act retaliation claims are not actionable because both statutes only protect employees who oppose an unlawful discrimination against another <u>employee</u>.[7]  Students are not employees.  Therefore, according to the District, Reece did not engage in protected activity as defined by Title VII and his Title VII claim should be dismissed.  Reece

---

[7] Idaho courts follow federal case law interpreting Title VII when analyzing comparable provisions.  *Fowler v. Kootenai County*, 128 Idaho 740, 918 P.2d 1185 (1996).  Therefore, the Court will consider these to claims together.

responds that his Title VII claim can survive if he can prove that he reasonably believed the female students were protected by Title VII.

Reece need not prove actionable discrimination to establish he engaged in protected opposition to discrimination.  *Moyo v. Gomez*, 32 F.3d 1382, 1385 (9th Cir. 1994).  To constitute protected activity, his opposition must have derived from a good faith, reasonable belief that the District engaged in an unlawful employment practice.  *Id.*  In *Moyo*, the Ninth Circuit held that the reasonableness of plaintiff's belief that an unlawful employment practice occurred must be assessed according to an objective standard, "one that makes due allowance, moreover, for the limited knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their claims." 32 F.3d at 1385- 86.  The *Moyo* court further noted that courts construe Title VII broadly, which must be taken into account when deciding whether plaintiff reasonably believed that a violation had occurred. *Id.* at 1386.

The Court agrees with the District: Reece cannot establish he held a reasonable belief that Title VII had been violated.  Title VII only proscribes discrimination against an individual "with respect to his compensation, terms, conditions, or privileges of employment."  *See* 42 U.S.C. § 2000e-3(a).  "The opposition clause, by its terms, protects only those employees who oppose what they reasonably perceive as discrimination *under the Act*."  *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988) (emphasis in the original).  While an employee

does not have to prove an actual violation of Title VII, "the opposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation." *Id.* (*citing  Silver v. KCA, Inc.*, 586 F.2d 138, 142 (9th Cir. 1978) ("under the clear language of the "opposition" clause of [section] 704(a), a case of retaliation has not been made out unless the "retaliation" relates to the employee's opposition to a [section] 703 violation").

Reece's good faith belief the students were covered under Title VII is not enough; it must also be reasonable.   Reece could not have reasonably believed that he had opposed an unlawful employment practice by reporting sexual harassment claims made by <u>students</u>, who clearly are not employees of the District – no matter how broadly Title VII is construed.  *C.f., Moyo*, 32 F.3d at 1385-86 ("Moyo would be able to state a retaliation claim if he could show that his belief that an unlawful employment practice occurred (*i.e.,* that the inmates were employees protected by Title VII).").

## Breach of Contract Claims

### A.    Policy 4124

Reece alleges the District breached his employment contract by violating the anti-discrimination provisions of District Policy 7124, which prohibits retaliation for any employee's report of prohibited employer actions.  The District responds that there is no evidence that Reece suffered an adverse employment <u>because</u> he opposed

prohibited conduct by his employer.  The District argues the evidence shows, as a matter of law, that Reece was reprimanded and transferred for the reasons set forth in the Reprimand.  However, the Court has previously found that questions of fact exist concerning whether the District reprimanded and transferred Reece because of the reasons set forth in the Reprimand or because Reece reported sexual harassment claims.  This conclusion precludes summary judgment on Reece's breach of contract claim.

### B.    Policy 7117

Policy 7117 states that teachers may only be transferred to another school if the transfer is within the person's academic preparation and certification.  Reece argues that the District breached this policy because he was transferred to a position not within his academic preparation.  The Court finds issues of fact exist with respect to this question of whether Reece was transferred to a position within this academic preparation.  Therefore, the Court will deny the District's motion for summary judgment with respect to the breach of contract claim based on Policy 7117.

### C.    Money Damages

The District also cites Reece's lack of monetary damages as a result of any alleged breach of contract by the District as another reason to dismiss his breach of contract claim.  "Upon the breach of contract, the party not at fault" may "refuse to

recognize the breach and compel its performance." *Koch v. Glenn*, 53 Idaho 761,

765, 27 P.2d 870 (1933).   Here, Reece seeks to compel the District to return him to

a position teaching Keyboarding and to remove the Reprimand contained in his file.

Although specific performance is an extraordinary remedy, *Fullteron v. Griswold*,

142 Idaho 820, 823, 136 P. 3d 291, 294 (2006), it is a valid form of relief that Reece

may properly seek.   Accordingly, for this reason and for those stated above, Reece

may go forward with his breach of contract claim.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED that consistent with the

foregoing, that the District's motion for summary judgment (Docket No. 9) is

GRANTED IN PART AND DENIED IN PART.  It is granted to the extent it seeks

summary judgment as to the Third and Fourth Claims for Relief.  It is denied to the

extent it seeks summary judgment on the remaining claims contained in the First,

Second, Fifth, and Sixth Claims for Relief.

.    IT IS FURTHER ORDERED, that within one week from the date of this

decision, Plaintiff's counsel shall contact the Court's Clerk, Jamie Gearhart (334-

9021) to arrange a telephone scheduling conference to schedule a trial and pretrial

conference.



DATED:  **May 5, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge