UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RONALD REECE,<br><br>              Plaintiff,<br><br>   v.<br><br><br>POCATELLO/CHUBBUCK SCHOOL<br>DISTRICT NO. 25,<br><br>              Defendant. | Case No. 4:09-CV-087-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it motions in limine filed by Defendant Pocatello/Chubbuck School District No. 25. (Dkts. 28, 29, 30). The motions are fully briefed and at issue. The Court explains its ruling on each motion below.

**1.     Reporting Students' Testimony**

The District seeks to exclude, under Rules 402 and 403, the testimony of students who accused Principal Reader of sexual harassment. Reece intends to introduce the students' testimony to show that the District did not honestly believe their stated reasons for reprimanding and reassigning Reece.

The District's investigation into the allegations against Principal Reader, which

included interviewing the students to determine the "veracity" of their statements, resulted in the issuance of a "Notice of Reprimand and Notice of Reassignment" against Reece. Mr. Howell, writing on behalf of the District, stated:

> During the investigation an alarming pattern of misconduct was discovered involving another teacher and yourself. ...It is clear that you had discussed and conspired with another teacher in order to paint the Principal in a very damaging light....However, it is simply too great of a coincidence that the only two teachers in the entire school that had verbal complaints about the management style of the Principal were the instigators of the solicitation of the student complaints.

*Notice of Reprimand and Notice of Reassignment* at 1, Dkt 11-5.

In the Reprimand, Mr. Howell also included the following statements: (1) "it was the conclusion of the investigators that no allegation could be substantiated to show any type of improper touching or sexual harassment"; (2) "The fact that you waited until another educator had collected more statements is a clear violation of state law. Had you contacted the School Resource Office, you would have learned that the primary complainant in this matter had made the identical complaint on two other occasions and had recanted her testimony on both occasions"; (3) "Your holding back information and allowing the solicitation of other student statements contributed to a climate of accusatory conduct..."; (4) "You are to refrain from the utilization of students in any damaging or harmful acts." *Id.* at 1-2. For each of these reasons, the Superintendent recommended that Reece be transferred from Hawthorne to Franklin Middle School. *Id.* at 2.

The District has alleged that it performed a "thorough and objective investigation,"

which led to above conclusions. *Howell Aff.* ¶ 17. Reece questions whether the investigation was as objective as the District professes, and he submits the students will be able to testify to this issue.

The thoroughness and objectivity of the investigation bears directly on the question of whether the District honestly believed the stated reasons for Reece's reprimand and reassignment. *See, e.g., Eakerns v. Kingman Regional Medical Center*, CV 06-3009-PHX, 2009 WL 735148, *10 (D.Ariz. March 19, 2009) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). Thus, to the extent the students may offer evidence on this point, their testimony is relevant.

In addition, the students' testimony may be relevant to the District's position that Reece involved himself in a conspiracy to discredit Principal Reader's reputation. Mr. Howell testified that in his opinion, "Mr. Reece was aware of the allegations of sexual misconduct against Principal Reader at least two weeks prior to the submission of his letter dated May 7, 2007..." *Howell Aff.* ¶ 11. The students will be asked whether the District even inquired as to Reece's awareness of any allegations prior to his submission of their written reports. Reece will argue that a negative response to this questioning will render the District's belief that Reece engaged in a conspiracy less credible.

The District argues that such use of the students' testimony is unfair. It argues that "allowing the students to testify about Principal Reader's alleged harassment, and the "rudeness" of the investigators (including Defendant's trial counsel) is clearly an emotional ploy intended to stir feelings of resentment and prejudice against Defendant

and its counsel." *Def.'s Br.* at 7.

The District must show that the probative value is substantially outweighed by the danger of unfair prejudice under Rule 403. The students' testimony have a probative value as described in the examples discussed above – in those examples, the District's alleged lack of thoroughness and objectivity in conducting its investigation casts doubt on the veracity of the District's proffered reasons for reassigning Reece.

Certainly there will be some trial time expended in the District showing that its investigation was fair and thorough. In examining the "unfair prejudice" required for exclusion under Rule 403, the Court cannot say that it substantially outweighs the probative value of the evidence. While the District argues that allowing the students to testify will inflame the jury, the District has represented that the investigation was fair and objective. Given this representation, the students' testimony should not be prejudicial.

The motion will be denied.

## 2. Evidence of Changes to School District Policy Language

The District seeks to exclude, under Rule 407, any evidence that it removed the word "leering" from its policies pertaining to the prohibition of sexual harassment in the work place. The District claims that the removal of "leering" from its definition of sexual harassment was a subsequent remedial measure under Rule 407. Federal Rule of Evidence 407 provides: "[w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less

likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct." Fed. R. Evid. 407. As stated by the Advisory Committee: The rule is largely grounded in "a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety."

The Court cannot see how restricting the definition of sexual harassment by omitting the word "leering" increases student safety, or how it would have made the events at issue here less likely to occur. The District contends they removed the word "leering" from the policy "because the term was far too subjective and could result in many *false allegations of sexual harassment*..." *Def.'s Reply* at 2. (Emphasis original). The District's argument might resonate more if this lawsuit involved a claim against the District that its sexual harassment policy somehow encouraged the reporting of false sexual harassment claims. But that is not the question in this case. Thus, the Court finds that the change in policy language does not fall within Rule 407.

This does not mean, however, that the evidence of the policy change is necessarily admissible. The District also argues that it should be excluded under Rule 403. According to the District, "Plaintiff's attempt to demonstrate a district-wide conspiracy to protect the District from sexual harassment claims through an innocuous word change in its District policy regarding sexual harassment is nothing more than an effort to inflame the passion of the jury for the purpose of causing unfair prejudice, to confuse the jury as to the issues before it, to mislead the jury as to evidence which would allow it to find retaliation, and/or pretext by Defendant and would also serve to waste the time of the

Court." *Def.'s Br.* at 4-5.

Reece responds that the removal of the term "leering" from the sexual harassment definition will be relevant to rebut the District's position that "Mr. Reece was a conspiring wrongdoer." *Pl.'s Resp.* at 4, Dkt. 42. Reece states he only did what was required by reporting Principal Reader's alleged "leering."

Evidence that the sexual harassment policy prohibited "leering" at the time Reece reported the student sexual harassment allegations could support Reece's argument that he acted appropriately by making the report. Conversely, it could undermine the District's argument that Reece engaged in a wrongful conspiracy "to paint the Principal in a very damaging light." This evidence could therefore be probative of pretext. Moreover, evidence that the District later omitted this provision from the District's investigation report – the report that served as the basis for Reece's reprimand and reassignment – also could be viewed as evidence of the District's efforts to limit its own liability and punish Reece for making a legitimate report.

This motion will also be denied.

**3.     Evidence Pertaining to Liability Insurance and Brian Julian's Involvement in Investigating the Sexual Harassment Allegations Against Principal Reader**

The District seeks to exclude evidence of the role of Brian Julian as the attorney for the District's insurance company. The District argues that this evidence is irrelevant and, even if relevant, its probative value is substantially outweighed by the danger of unfair prejudice under Rule 403.

The Court agrees that there is no reason to allow Reece to refer to Mr. Julian's as the District's liability insurance attorney. Generally speaking, evidence of liability insurance is not admissible, Fed. R. Evid. 411, and at this point in the proceedings the Court does not find any exceptions to this rule would apply. The Court, however, will allow Reece to introduce evidence that Mr. Julian participated in the investigation and was present when the students were interviewed. This will allow Reece to explore its argument that the District used the investigation to protect itself and find reasons to punish Reece for reporting the sexual harassment allegations.

The District is also concerned that Reece may call Mr. Julian as a witness. Absent extraordinary circumstances or compelling reasons, an attorney who participates in a case should not be called as a witness. *See, e.g., U.S. v. Lorenzo*, 995 F.2d 1448, 1452 (9th Cir. 1993) ("A federal prosecutor may testify at a trial in which he is participating only if there is a compelling need.")[1] Evidence that Mr. Julian participated in the investigation and the tenor of that investigation can be gleaned from other sources. Thus the Court does not see a compelling need here to call Mr. Julian as a witness. Accordingly, this motion is granted in part and denied in part.

## ORDER

**IT IS ORDERED that:**

---

[1] *See also United States v. Dack*, 747 F.2d 1172, 1176 n. 5 (7th Cir. 1984) ("Where evidence is easily available from other sources and absent 'extraordinary circumstances' or 'compelling reasons,' an attorney who participates in the case should not be called as a witness.") (quoting *United States v. Johnston*, 690 F.2d 638, 64 (7th Cir. 1982)).

1.   Defendant's Motion in Limine to Exclude Evidence of Changes to School District Policy Language (Dkt. 28) is **DENIED**.

2.   Defendant's Motion in Limine to Exclude Testimony of Students (Dkt. 29) is **DENIED**.

3.   Defendant's Motion in Limine to Exclude Evidence of Liability Insurance (Dkt. 30) is **GRANTED in part and DENIED in part.**

DATED:  **October 14, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge