UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RONALD REECE,<br><br>            Plaintiff,<br><br>   v.<br><br>POCATELLO/CHUBBUCK SCHOOL DISTRICT NO. 25,<br><br>            Defendant. | Case No. 4:09-CV-087-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Plaintiff Ronald Reece's Motion for a New Trial (Dkt. 71). Reece sued the Pocatello/Chubbuck School District No. 25, alleging that the District retaliated against him for reporting student allegations of sexual harassment by reassigning him to a new school and new subjects. Reece's claims against the District were tried before a jury in October 2010, and the jury found in favor of the District. Reece now moves the Court for an order granting a new trial pursuant to Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure on the grounds that the verdict in this case was

MEMORANDUM DECISION AND ORDER - 1

against the weight of the evidence. For the reasons expressed below, the Court will deny Reece's request for a new trial.

## BACKGROUND

Plaintiff Ronald Reece started working for the School District in 1994 as a "Keyboarding I" instructor at Hawthorne Middle School. Following the 2006-2007 school year, Reece was reprimanded and involuntarily reassigned from Hawthorne to teach Geography and Study Skills at Franklin Middle School.

Reece was reprimanded and reassigned to Franklin after he reported female student allegations of improper sexually-oriented conduct by Hawthorne Principal Douglas Reader. At trial, Reece testified that he first learned of the allegations through his colleague, Hawthorne Math teacher, Cindy Lovell. Ms. Lovell had gathered 24 statements written by female students complaining of sexual harassment by Mr. Reader. According to Reece, Ms. Lovell first approached him with these statements on May 7, 2007. Reece insisted that he had played no role in obtaining or gathering the statements, and testified that he knew nothing of the statements prior to May 7, 2007.

That same day – May 7, 2007, Reece and Lovell handed over the statements to Reece's brother, Norman Reece, an attorney. Norman Reece immediately delivered the statements to the Idaho Department of Health and Welfare, and the Department contacted local law enforcement. Reece also hand delivered the statements to Bob Devine, Director of Secondary Education, at the District's Administrative offices.

His delivery to Mr. Devine, however, contained more than the student statements.

MEMORANDUM DECISION AND ORDER - 2

It also included two letters: one Reece drafted dated May 7, 2007, and another letter dated April 26, 2006, signed by a first-year teacher, H. Mercedes Nelson. The letters criticized Reader's management style. The teachers' letters did not relate to the student allegations of sexually harassing conduct by Mr. Reader, with the exception of one comment by Nelson that she had overheard a student say she would not try out for cheerleading because she did not want Reader "checking me out."

Both local law enforcement and the District immediately commenced investigations into the issues raised by the materials Reece had presented. On May 24, 2007, the police investigators submitted a copy of an investigative report to the Pocatello City Prosecutor's office. The Prosecutor's office declined to pursue criminal charges against Reader.

Counsel for the District, Brian K. Julian, and the Director of Human Resources, Douglas Howell, Ed.D, conducted the investigation on behalf of the District. The District's investigation consisted of interviewing most of the students involved and members of the Hawthorne staff. Dr. Howell drafted a 20-page report detailing the persons interviewed and his conclusions.

The District's investigation into the allegations against Reader resulted in the issuance of a "Notice of Reprimand and Notice of Reassignment" against Reece, on June 12, 2007. *Trial Ex. 1012*. Dr. Howell, writing on behalf of the District, stated:

During the investigation an alarming pattern of misconduct was discovered

> involving another teacher and yourself. ...It is clear that you had discussed and conspired with another teacher in order to paint the Principal in a very damaging light....However, it is simply too great of a coincidence that the only to teachers in the entire school that had verbal complaints about the management style of the Principal were the instigators of the solicitation of the student complaints.

*Id.* Dr. Howell further explained that the District also suspected Reece had violated federal law, State Board of Education regulations, and local School Board policy by sharing a students disciplinary file with his attorney and by failing to report the suspected abuse of children in compliance with Idaho law.

Dr. Howell testified that the District did not issue the notice and reprimand because Reece had reported student allegations of sexual harassment against Principal Reader; instead, the District found, as explained in the reprimand letter, that Reece had engaged in misconduct separate from the reporting of the alleged sexual harassment charges.

After sending the letter to Reece, the District placed it in Reece's personnel file in accordance with Idaho Code § 33-518 and forwarded a report of Reece's conduct to the Professional Standards Commission for review. In addition, based on the findings outlined in the Notice, the District recommended that Reece be transferred from Hawthorne to Franklin in accordance with the involuntary transfer provisions of Procedure 7117. The reprimand letter did not contain any information about what subjects Reece would be teaching at Franklin.

As the summer following the 2006-2007 school year progressed, Reece repeatedly

asked Dr. Howell what class he would be teaching at Franklin. Only when Reece reported for the new school year was he informed he would be teaching Geography and a newly created class, Study Skills. Reece had never taught Geography and had no background in this subject; nor had he taught Study Skills, which was not only new to him but had never been taught at Franklin. Because Mr. Howell did not inform him that he would be teaching these classes until the first day he reported to the new school, Reece had to scramble to create new lesson plans for the two classes; and for Study Skills, he had to create an entirely new curriculum.

Reece also claims that Mr. Howell initially took the position that Reece was not qualified to teach the new classes and that he would have to take a course and a test for qualification. Reece never took the qualification test and eventually the issue was dropped. Reece maintains that he was subjected to heightened monitoring by the superintendent and the Franklin principal at the new school. Reece said the monitoring was unusual and had never happened before.

Neither the reprimand nor the reassignment resulted in reduced pay or benefits.

On February 27, 2009, Reece filed a complaint alleging he was reassigned to Franklin in retaliation for reporting female student allegations of improper sexually-oriented conduct by the Hawthorne principal in violation of Title IX and Section 1983. Reece also claimed that the School District's conduct breached his employment contract and violated District policy. This Court denied the District's motion for summary judgment, concluding that a reasonable juror could find that Reece suffered an

**MEMORANDUM DECISION AND ORDER - 5**

adverse employment action and could infer that the reason for the action was retaliation.

The parties tried the case before a jury for six days in October 2010. At the close of evidence and after arguments, the Court instructed the jury as to the relevant law and provided it with a written version of the instructions, including the applicable standard for determining an adverse employment action and the relevant District policies. On October 26, 2010, a jury rendered a verdict in favor the District. It found that the District had not taken an adverse employment action against Reece. In addition, it found that the District did not violate its Harassment and/or Discrimination Policy 7124, or its Assignment and Transfer Policy 7117.

Reece now moves for new trial on all three of his claims. He contends that the jury's finding that he did not suffer an adverse employment action was against the great weight of the evidence. Also, Reece maintains that the jury's finding that the District did not breach its employment contract with Reece by violating District policy was against "the plain language of the policy[,] the weight of the evidence and admissions of Defendant." *Pl's Brief* at 2, Dkt. 71-1.

## ANALYSIS

1.  **Motion for a New Trial**

    A.  *Legal Standard*

    Rule 59(a) states: "A new trial may be granted ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." "Historically recognized

grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotations marks and citation omitted). A new trial may be granted only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice. *Molski*, 481 F.3d at 729; *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000).

In considering a motion for a new trial, the court may weigh the evidence and assess the credibility of witnesses, and the court need not view the evidence in the light most favorable to the prevailing party. *Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 190 (9th Cir. 1989). However, a court should upset the jury's verdict only where the evidence at trial supports only one reasonable verdict – that in favor of the moving party. *E.g., The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1151 (9th Cir. 1988). "Doubts about the correctness of the verdict are not sufficient grounds for a new trial: the trial court must have a firm conviction that the jury has made a mistake." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987).

### B. *Title IX*

Title IX prohibits educational institutions receiving federal financial assistance from retaliating against persons for opposing unlawful discrimination. *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005). Those legal principles guiding a

court in a Title VII dispute apply with equal force in a Title IX action. *Id.*

An adverse employment action includes any activity that a reasonable employee would have found materially adverse, which in this context means it well might dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). It is an objective standard. *Burlington Northern*, 548 U.S. at 68. The test may cover lateral transfers and undeserved reprimands. *Burlington Northern*, 548 U.S. at 68. *See also Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000).

Reece argues that the evidence presented at trial established that he suffered an adverse employment action. Reece points to the reprimand he received and which was placed in his personnel file, his involuntary transfer to another school where he was assigned to teach two new subjects outside his area of expertise, and the "new and different monitoring" he was subjected to at the new school. The Court, however, finds that sufficient evidence existed in the record to support the jury's finding that Reece did not suffer an adverse employment action.

The Ninth Circuit has recognized that *undeserved* reprimands, *if proven*, would constitute adverse employment decisions. *Hardage v. CBS Broadcasting, Inc.,* 427 F.3d 1177, 1188 (9th Cir 2005). Here, by contrast, a jury could have reasonably concluded that the reprimand Reece received was deserved. A review of the evidence suggests that the District conducted a thorough investigation before concluding that Reece should be reprimanded. The District's investigation consisted of interviewing most of the students

involved and members of the Hawthorne staff, and Dr. Howell drafted a 20-page report detailing the persons interviewed and his conclusions. Although Reece maintained the investigation was "biased" and intended solely to exonerate Principal Reader, Dr. Howell testified that he tried to conduct a thorough investigation and that, at the time, he honestly believed he had reached the right conclusion. A jury had a reasonable basis to believe Dr. Howell's testimony, which would support a finding that Reece's reprimand was deserved.

. Likewise, a jury could have reasonably concluded that the "new and different monitoring" Reece testified he suffered did not constitute an adverse employment action. *Cf., Burlington Northern*, 548 U.S. at 68-69. In *Burlington Northern*, the Supreme Court noted that an "employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68. It could be that the jury concluded that the supposedly heightened scrutiny that Reece suffered was too insignificant to be "materially" adverse. *Id.* Such a conclusion would not have been against the great weight of the evidence.

Whether Reece's involuntary transfer to a new school qualifies as an adverse employment action is a closer question. However, a jury typically decides whether a lateral transfer constitutes an adverse employment action. *See, e.g., Czekalski v. LaHood*, 589 F.3d 449, 456 (C.A.D.C 2009). And the Court finds that the record contains enough evidence to uphold the jury's determination on this issue. Reece retained the same job title, and the transfer did not reduce his pay or his benefits. Nor were his essential job

responsibilities diminished, or even significantly changed – he remained a middle school teacher. Reece argues that the transfer "stigmatized" him, but other than his own testimony, he submitted no evidence to prove this. While it is true there was some evidence at trial that the involuntary transfer was an adverse employment action, the evidence did not compel this conclusion.

### B. *Breach of Employment Contract*

#### (1) *Harassment and/or Discrimination Policy/Procedure 7124*

The jury found that the District did not violate the "Harassment and/or Discrimination" Policy 7124. At the parties' request, the jury instructions set forth the relevant portions of the policy, and the jury was instructed to find whether the District violated this policy. The entire policy was also a trial exhibit, and was given to the jury. *Trial Ex. 1019.* The policy prohibits retaliation and provides in relevant part as follows:

> RETALIATION
> Retaliation against any individual who makes a complaint or brings such objectionable conduct to the District's attention or who assists or participates in any investigation, proceeding or litigation pertaining to harassment or any other form of discriminatory conduct is prohibited. Any such retaliation constitutes grounds for immediate disciplinary action up to and including termination.

*Trial Ex.* 1019.

According to Reece, the jury's determination that the District did not violate this policy is contrary to the plain language of the policy, the weight of the evidence, and the admissions of the District. Reece states: "[t]he evidence – and Jury's finding – was that Mr. Reece brought 'such objectionable conduct to the District's attention' and therefore

any form of retaliatory or discriminatory conduct is expressly prohibited by District Policy." *Pl.'s Br.* at 8, Dkt. 71-1.

Reece correctly notes that the jury found that he engaged in protected activity. *Special Verdict* at 1, Dkt. 66. It is also true that the plain language of the policy prohibits the District from retaliating against individuals, like Reece, who bring objectionable conduct to the District's attention. However, at this point, Reece's analysis runs off track: he presumes that the jury's finding that Reece reported objectionable conduct to the District proves that the District retaliated against Reece. The jury specifically found, however, that the District did not subject Reece to an adverse employment action – a finding which the Court upholds. Without a finding that the District engaged in retaliatory conduct, there can be no violation of the District' policy prohibiting retaliation.

Reece also seems to suggest that the District's admissions that it took employment actions against Reece equates to an admission that such employment actions were "adverse." But not all employment actions rise to the level of 'material adversity.' *Burlington Northern*, 548 U.S. at 68-69. Nor do the District's admissions that it took employment action against Reece by reprimanding him and transferring him mean that the District reprimanded and transferred him <u>because</u> he reported objectionable conduct. To the contrary, the District presented evidence at trial that it reprimanded and transferred Reece because he engaged in misconduct separate from reporting the student allegations of sexual harassment. For these reasons, the Court finds Reece's argument that the District "admitted" to retaliating against him unpersuasive. The jury's verdict finding

that the District did not violate the "Harassment and/or Discrimination" Policy 7124 therefore stands.

### (2) *Assignment and Transfer Policy 7117*

The jury also found that the District did not violate the "Assignment and Transfer" Policy 7117. This policy provides that teachers may be involuntarily transferred or reassigned "upon recommendation of the Superintendent or his/her designee from one school position or grade level to another if such transfer is within the area of the person's academic preparation and certification." *Trial Ex. 1021*. Reece argues that the jury's conclusion that the District did not violate the policy was against the great weight of the evidence.

The jury, however, was given a copy of the policy and instructed to find whether Reece's involuntary transfer violated the policy. They found it did not. This conclusion did not run counter to the evidence. There was no question that Reece was certified to teach Geography and Study Skills. As to whether Reece was transferred to an area within his academic preparation, the term "academic preparation" was never defined by either of the parties. Thus, it would have been left to the jury to assign a meaning to this term, and presumably the jury decided that teaching Geography and Study Skills was within Reece's academic preparation.

Reece graduated with a college degree from Idaho State University and received his teaching certification. Dr. Howell testified that Reece was transferred to a position within his certification and endorsement. Initially, Dr. Howell believed Reece did not

meet a "highly qualified" status; however, Dr. Howell testified that he reviewed Reece's college transcripts and discovered that Reece had 30-plus credits in a social science, which would make him "highly qualified" to teach Geography. Moreover, Reece received good performance reviews while teaching Geography and Study Skills at Franklin. Simply because Reece did not have a specific degree in Geography or Study Skills, or because Reece felt uncomfortable teaching these subjects, does not compel the conclusion that teaching these subjects was outside his academic preparation. The Court therefore refuses to overturn the jury's verdict on this issue.

## ORDER

**IT IS ORDERED that** Plaintiff Ronald Reece's Motion for a New Trial (Dkt. 71) is **DENIED**.

DATED: **March 4, 2011**

B. LYNN WINMILL
Chief Judge U.S. District Court